**SMITH et al. v. UNITED STATES.**

**No. 7447.**

United States Court of Appeals for the

District of Columbia.

Argued April 8, 1940.

Decided May 13, 1940.

Charles E. Ford, James K. Hughes, and Milton Kaplan, all of Washington, D. C., for appellants.

Edward M. Curran, U. S. Atty., and William S. Tarver, Asst. U. S. Atty., both of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and EDGERTON and VINSON, Associate Justices.

PER CURIAM.

Appellants and one Rattley were convicted on counts 9, 10, and 11 of an indictment charging violation of the lottery

law applicable to the District of Columbia, and on count 12, charging a conspiracy to violate that law.[1] Rattley did not appeal. The jury acquitted appellants on the first 8 counts.

The evidence disclosed that in the latter part of December, 1938, and early part of January, 1939, Police Officer Best made "numbers plays" with defendant Rattley in Washington City. Officers Best and Bradley had Rattley under observation for a period of two or three weeks. They saw him at about the same hour each day in the vicinity of 14th and U Streets, N.W. Time and again appellant Geraldine Hall, driving a Plymouth automobile, met him in this neighborhood, and the officers observed the transfer of small brown or white packages from Rattley to Miss Hall. On December 23, 24, and 26 Officers Best and Bradley followed Miss Hall to Town Tavern, an inn located near the Peace Cross at Bladensburg, Maryland. On the 26th the officers observed her go to the rear of the tavern and return to her car and drive off toward Washington. On the 27th Sergeant Deyoe and Officers Little and Smith in one car and Best and Bradley in another observed her as before drive up to the tavern where two colored men walked over to her car and received a package from her. Shortly thereafter appellant Smith drove up, and one of the colored men gave him two or three packages, including the one obtained from Miss Hall. Smith then drove back through the District of Columbia into another part of Maryland. The officers were again at the tavern January 6, and witnessed the same sequence of events, but without positively identifying the last person to receive the packages. On January 7, Best made a numbers play with Rattley, using marked money and a slip of paper on which he had written the numbers he was playing. In the afternoon of that day the officers again followed Miss Hall to the tavern, where she parked her car and got out and delivered a brown package to a young white man. Appellant Smith drove up shortly thereafter, and this same young man walked over to Smith's car and placed the package on the seat. Appellant Smith and Miss Hall then drove away. The police followed Smith and arrested him on a warrant obtained the day before from a United States Commissioner. On his way to police headquarters he endeavored to throw a large quantity of "numbers slips" out of the automobile window. A search of his car developed several thousand numbers slips and the paper bag which the officer had seen taken from Miss Hall's car. The latter contained slips, including the one used by Best to make his bet with Rattley. Other police officers followed Miss Hall and arrested her in the City of Washington, and later the same day arrested Rattley. They found on his person $215.05 in cash, including four of the marked coins which Best had used in his play with Rattley.

Appellant Smith first insists that the warrant of arrest was improperly issued and that the lottery papers obtained from his person and automobile should, therefore, have been excluded as evidence illegally obtained. The objection was not made until the trial was well under way, and we have recently held that, unless there is no opportunity to make the motion in advance of trial, the objection comes too late after the trial is in progress. Bennett v. United States, 70 App. D.C. 76, 104 F.2d 209. Here there is no showing that appellant lacked this opportunity. See Nardone v. United States, 308 U.S. 338, at page 342, 60 S.Ct. 266, 84 L.Ed. 307.

It is next urged that the court erred in excusing for cause six jurors who admittedly had played the numbers game in Washington within two years. Appellants say they are aggrieved, because in this way the government exercised more peremptory challenges than are allowed by law. The record shows that, when the prospective jurors were called on the voir dire, the judge asked if any had played the numbers game within two years. Six answered "yes" and were excused for cause. We are unable to see anything wrong in this. Appellants do not complain of the fairness of the jury as impaneled, and all that they are en-

---

[1] Secs. 863 and 863a of the Code of Law for the District of Columbia make it a criminal offense either to be concerned in the operation of a lottery, or to have in one's possession any writing or other device used or to be used in the operation of a lottery. D.C.Code, 1929 (Supp. V), Tit. 6, Secs. 151, 151a.

titled to is a trial by an impartial jury. Moreover, we think it was well within the judicial discretion of the judge to excuse prospective jurors on the ground stated, and it makes no difference whether the release was for cause or favor. Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244; Horton v. United States, 15 App.D.C. 310; Fall v. United States, 60 App.D.C. 124, 129, 49 F.2d 506.

In the third place it is said the court erred in not instructing the jury to disregard, so far as these two appellants are concerned, certain testimony of police officers relative to numbers plays and delivery of packages to Rattley. As to this, counsel say, there is no evidence that any of the plays made by Best with Rattley showed either of appellants to be connected with them. Obviously this is incorrect. The evidence clearly shows the relationship which each of the accused bore to the transaction about which the witnesses testified. True enough, all of the accused were not present at the same place at the same time, but their relationship to the common purpose was sufficiently shown to justify the jury, if the testimony was believed, in finding that appellants were engaged in the conspiracy. When appellant Smith was arrested on January 7, he had in his car a brown package, which contained the writing delivered to Rattley earlier in the day and which had been traced through appellant Hall. This evidence gives significance to the previous transactions, as to which there was much testimony, since it tends to prove that the previous transfers of packages were part of the operation of the lottery. Smith was twice identified as the last recipient. Consequently, the evidence of bets and the things seen by the police of the movements of the three defendants were all relevant, particularly on the conspiracy count of the indictment. When Smith himself was arrested, large quantities of numbers slips were found in his possession. This itself is a crime under the statute, and Miss Hall's delivery of the package of numbers slips to him definitely connects her with the general plan.

Counsel objected also to the fact that the judge told the jury that they should draw no unfavorable inference from the failure of the accused to testify in their own behalf. This instruction is one which the court is required to give at the instance of the accused. Wilson v. United States, 149 U.S. 60, 67, 13 S.Ct. 765, 37 L.Ed. 650. That it was given in this case on the court's own motion does not make it any the less proper. Judge Sanborn, in the Seventh Circuit, in passing upon the same objection, said: "This instruction was evidently for the purpose of cautioning the jury not to make any inference against the defendant as they otherwise might have done. It was carefully guarded, and should receive the approval of the court. In any event, it could work no injury." Hanish v. United States, 227 F. 584, 586, 587. See also United States v. Brookman, D.C., 1 F.2d 528, affirmed, 8 Cir., 8 F.2d 803. There is nothing in Bruno v. United States, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257, to the contrary.

A full reading of the court's charge shows that it was even more favorable to all the accused than they had a right to demand, and an examination of the whole record discloses abundant proof of appellants' guilt. Therefore, without stopping to discuss other assignments, which we think are without merit, we affirm the judgment of the lower court.

Affirmed.